UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
CHRIS MONE,

                      Plaintiff,                      **21 CV 6914 (DG)(LB)**
      -against-

NEW YORK STATE UNIFIED COURT SYSTEM,

                      Defendant.
---------------------------------------------------------------X
COLLEEN MONE,

                      Plaintiff,                      **21 CV 6915 (DG)(LB)**
      -against-

NEW YORK STATE UNIFIED COURT SYSTEM,

                      Defendant.
---------------------------------------------------------------X
**BLOOM, United States Magistrate Judge:**

## REPORT & RECOMMENDATION

Plaintiffs Chris Mone ("Chris") and Colleen Mone ("Colleen"), proceeding *pro se*, bring two separate but substantively identical employment discrimination actions against defendant, the New York State Unified Court System, under Titles I and V of the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act ("Section 504"). Defendant moves to dismiss plaintiff's Amended Complaints pursuant to Federal Rules of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction and 12(b)(6) for failure to state a claim. The Honorable Diane Gujarati referred defendant's motions to me in accordance with 28 U.S.C. § 636(b).

## BACKGROUND

Approximately three years after the first confirmed case of the novel coronavirus ("COVID-19") was reported in the United States, the facts of the global pandemic are unfortunately familiar to us all. As part of the nationwide response to COVID-19, many employers enacted rules to limit the spread and severity of the disease. On September 7, 2021, defendant New York State Unified Court

System ("UCS")—the Judicial Branch of New York State government—began a mandatory COVID-19 testing program for all judges and nonjudicial employees who had not submitted proof that they were fully vaccinated against the virus (hereafter the "testing mandate"). No. 21-CV-6914, ECF No. 26 ("Am. Compl.") at 29; No. 21-CV-6915, ECF No. 27 ("Am. Compl.") at 28.[1] Defendant's September 1, 2021 memorandum detailing the testing mandate explained that nonjudicial employees would be entitled to one hour of paid leave per week to take a COVID-19 test, after which they were required to upload their test result to an online portal. No. 21-CV-6914, Am. Compl. at 30-31; No. 21-CV-6915, Am. Compl. at 30-31. Defendant's memorandum further explained that failure to comply with the testing mandate would result in referral to the District Executive or NYC Chief Clerk, who "should exclude" the noncompliant employee from the workplace. No. 21-CV-6914, Am. Compl. at 32; No. 21-CV-6915, Am. Compl. at 31. Employees who were excluded "may be considered absent without authorization . . . ." Id.

On September 10, 2021, Nancy Barry and Justin Barry—the Chief of Operations and Chief of Administration at UCS, respectively—sent a memorandum to UCS staff stating that all judges and nonjudicial employees were required to have taken at least one dose of a COVID-19 vaccine, or to apply for a religious or medical exemption, by September 27, 2021 (hereafter the "vaccine mandate"). No. 21-CV-6914, Am. Compl. at 36-38; No. 21-CV-6915, Am. Compl. at 35-37. Employees who failed to comply would be "prohibited from reporting to work" and "may be considered absent without authorization," with continued noncompliance resulting in possible "disciplinary action, up to and including termination."[2] No. 21-CV-6914, Am. Compl. at 38; No. 21-CV-6915, Am. Compl. at 37.

---

[1] Annexed to plaintiffs' Amended Complaints are affidavits from each plaintiff and several exhibits. The Court refers to the Amended Complaints as "Am. Compl." and the affidavits as "Chris Aff." and "Colleen Aff." respectively. As the exhibits are not consistently numbered, the Court uses the ECF page numbers printed at the top of plaintiffs' Amended Complaints.
[2] The Court takes notice that defendant has recently relaxed these policies. See Daniel Wiessner, *N.Y. Court System Nixes COVID Vaccine Mandate for Employees* REUTERS, (Feb. 16, 2023), https://www.reuters.com/legal/government/ny-court-system-nixes-covid-vaccine-mandate-employees-2023-02-16/

Plaintiffs are court officers who allege defendant terminated them on September 28, 2021 and October 19, 2021 after they refused to comply with the vaccine mandate.[3] No. 21-CV-6914, Am. Compl. ¶ 14; No. 21-CV-6915, Am. Compl. ¶ 14. Prior to their terminations, plaintiffs lodged a series of complaints to UCS administrators about defendant's COVID-19 policies. On September 8, 2021, Chris, writing on behalf of Colleen and others, sent an email to Lawrence Marks, the Chief Administrative Judge, asserting that defendant's testing mandate was "extremely biased and discriminatory" because "[f]orcing healthy employees, absent any symptoms to be tested is implicitly unjust." No. 21-CV-6914, Am. Compl. at 34; No. 21-CV-6915, Am. Compl. at 33. On September 10, 2021, in response to the memorandum detailing the vaccine mandate, plaintiffs wrote to Marks, Justin Barry, Nancy Barry, and Janet DiFiore, then the Chief Judge of the New York Court of Appeals, calling defendant's policies "patently illegal," citing Title I of the ADA and stating "[y]ou are not permitted to regard me as having a disability, then make a record of such disability and then compel me to submit to your medical interventions without my consent."[4] No. 21-CV-6914, Am. Compl. at 39; No. 21-CV-6915, Am. Compl. at 38. On the same date, plaintiffs sent a similar message to Carolyn Grimaldi, a Human Resources staffer. No. 21-CV-6914, Am. Compl. at 41-42; No. 21-CV-6915, Am. Compl. at 40-41. Plaintiffs allege that "[d]efendant's responses to the requests made by [plaintiffs] to cease the discrimination and harassment were in fact non-responsive, dismissive or harassing[.]" No. 21-CV-6914, Am. Compl. ¶ 56; No. 21-CV-6915, Am. Compl. ¶ 56. On September 20, 2021, plaintiffs sent a message to Grimaldi and Eva Moy, of the Office of the Managing Inspector General for Bias Matters,

---

[3] Despite Chris' allegation that he was terminated on September 28, 2021, he also states he returned to work from October 5, 2021 (one day after a temporary restraining order halted enforcement of the UCS vaccine mandate) until October 7, 2021, when his "back injury flared-up[.]" No. 21-CV-6914, Chris Aff. ¶¶ 29-30.

Colleen alleges that she was "effectively terminated as of October 19, 2021," the day after her supervisor gave her a "letter" which said she was "'unfit to serve' as long as I was 'unvaccinated'. . . ." No. 21-CV-6915, Colleen Aff. ¶ 26. Colleen received this letter on October 18, 2021 because she was required to quarantine until October 4, 2021, the same date of the injunction, which lasted until October 14, 2021. Id. ¶¶ 24-25. Colleen claims she is terminated because "there is no end-date when my employer will not consider my classification as 'unvaccinated' as warranting an 'unfit to serve' designation. . . ." Id. ¶ 26.

[4] Justin Barry responded to this message on September 13, 2021, citing guidance from the CDC and stating that "[t]he scientific evidence is clear that widespread vaccination is the best tool available for protecting judges, employees and other court users in our courthouses." No. 21-CV-6914, Am. Compl., at 44.

generally reiterating their view that defendant's policies violated the ADA and "documenting acts of discrimination based upon disability, intimidation, retaliation and harassment by Janet Di[F]iore, Nancy J. Barry, Justin A. Barry, and Lawrence K. Marks, of which I have been subjected to on-the-job" No. 21-CV-6914, Am. Compl. at 54; No. 21-CV-6915, Am. Compl. at 50.

On September 20, 2021, plaintiffs filed charges of discrimination with the Equal Employment Opportunity Commission ("EEOC"). No. 21-CV-6914, Chris Aff., ¶ 20; No. 21-CV-6915, Colleen Aff., ¶ 18. Plaintiffs' identical complaints assert that defendant regarded plaintiffs as having a "contagious disease[,]" made a record of this "disability" and failed to engage in an interactive process. No. 21-CV-6914, Am. Compl. at 50-53; No. 21-CV-6915, Am. Compl. at 46-49. Plaintiffs assert defendant "threatened" them with "penalties" including termination for refusing "various accommodation measures" (such as social distancing and working in isolation), which plaintiffs rejected. No. 21-CV-6914, Am. Compl. at 51; No. 21-CV-6915, Am. Compl. at 47. The EEOC charges also state that defendant "retaliated" by "humiliating [plaintiffs] in front of others, by reprimanding [them] and has threatened or intimidated or coerced" plaintiffs. No. 21-CV-6914, Am. Compl. at 51-52; No. 21-CV-6915, Am. Compl. at 47-48. Plaintiffs sent their EEOC charges to Grimaldi and Moy. No. 21-CV-6914, Chris Aff., ¶ 20; No. 21-CV-6915, Colleen Aff., ¶ 18. Plaintiffs received right to sue letters from the EEOC on December 7, 2021. No. 21-CV-6914, Chris Aff. ¶ 35; No. 21-CV-6915, Colleen Aff. ¶ 28.

Plaintiffs seek declaratory and injunctive relief, including reinstatement, as well as compensatory and punitive damages and reasonable litigation fees and expenses. No. 21-CV-6914, Am. Compl. ¶¶ 77, 94; No. 21-CV-6915, Am. Compl. ¶¶ 77, 94.

## PROCEDURAL HISTORY

Plaintiffs commenced this action on December 10, 2021. No. 21-CV-6914, ECF No. 1; No. 21-CV-6915, ECF No. 1. Plaintiffs filed motions seeking a default judgment on March 14, 2022. No. 21-CV-6914, ECF No. 13; No. 21-CV-6915, ECF No. 13. Defendant appeared in both actions on

March 22, 2022 and plaintiffs withdrew their motions on May 10, 2022 following a Court conference. No. 21-CV-6914, ECF No. 23; No. 21-CV-6915, ECF No. 23. Plaintiffs filed their Amended Complaints on June 10, 2022.[5] No. 21-CV-6914, ECF No. 26; No. 21-CV-6915, ECF No. 27. Defendant filed the instant motions to dismiss on October 3, 2022.[6] No. 21-CV-6914, ECF Nos. 35-38; No. 21-CV-6915, ECF No. 36-39. Judge Gujarati referred the motions to me on October 4, 2022. See Electronic Order dated Oct. 4, 2022.

## DISCUSSION

On a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

To survive a motion to dismiss, plaintiff must do more than allege facts that are "merely consistent with" a defendant's liability or "speculative," Twombly, 550 U.S. at 555–56; they must allege facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 556). If a plaintiff does not "nudge[] [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed." Twombly, 550 U.S. at 570.

---

[5] Plaintiffs state the Court ordered them to amend their complaints in response to defendant's letters that identified the grounds on which defendant would move to dismiss plaintiffs' complaints. No. 21-CV-6914, Am. Compl. at 1; No. 21-CV-6915, Am. Compl. at 1. Rather than ordering plaintiffs to amend, the Court afforded plaintiffs the opportunity to amend their complaints to address defendant's arguments in their letter seeking a briefing schedule for their anticipated motions to dismiss. No. 21-CV-6914, ECF No. 17; No. 21-CV-6915, ECF No. 17.

[6] The Court notes but shall overlook that plaintiffs' motion papers are not signed as required by Rule 11. See Fed. R. Civ. P. 11 ("Every pleading, written motion, and other paper must be signed . . . by a party personally if the party is unrepresented.").

The standards for a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) and for a motion to dismiss for failure to state a claim under Rule 12(b)(6) are substantively identical. Moore v. PaineWebber, Inc., 189 F.3d 165, 169 n.3 (2d Cir. 1999). However, on a motion to dismiss under 12(b)(1), the party invoking the court's jurisdiction bears the burden of proof to show that subject matter jurisdiction exists, while the movant bears the burden of proof on a motion to dismiss under Rule 12(b)(6). Fountain v. Karim, 838 F.3d 129, 134 (2d Cir. 2016) (citing Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000)); McCray v. Lee, No. 16-CV-1730, 2017 WL 2275024, at *2 (S.D.N.Y. May 23, 2017).[7] A case must be dismissed for lack of subject matter jurisdiction when the Court "lacks the statutory or constitutional power to adjudicate it." Makarova, 201 F.3d at 113 (citing Fed. R. Civ. P. 12(b)(1)). A plaintiff must prove the existence of subject matter jurisdiction by a preponderance of the evidence. Aurecchione v. Schoolman Transp. Sys., Inc., 426 F.3d 635, 638 (2d Cir. 2005) (citing Luckett v. Bure, 290 F.3d 493, 497 (2d Cir. 2002)).

A court reviewing a motion to dismiss must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–56 (2007); In re NYSE Specialists Sec. Litig., 503 F.3d 89, 91 (2d Cir. 2007); Chambers v. Time Warner Inc., 282 F.3d 147, 152 (2d Cir. 2002). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

In deciding a motion to dismiss, the Court has the "obligation to construe *pro se* complaints liberally, even as [it] examine[s] such complaints for factual allegations sufficient to meet the plausibility requirement." Hill v. Curcione, 657 F.3d 116, 122 (2d Cir. 2011) (citation omitted). "It is well-established that the submissions of a *pro se* litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest." Meadows v. United Servs., Inc., 963 F.3d 240, 243

---

[7] The Clerk of Court is directed to send plaintiffs the attached copies of all the unreported cases cited herein.

(2d Cir. 2020) (citations omitted). In addition to the complaint, the Court may consider documents attached to the complaint, documents incorporated by reference therein, or documents that the complaint "relies heavily upon" and are "integral" to the complaint, even if not incorporated by reference. Chambers, 282 F.3d at 152–53. The Court may also consider "factual allegations made by a *pro se* party in his papers opposing the motion" to dismiss. Antrobus v. City of New York, No. 19-CV-6277, 2021 WL 848786, at *3 (E.D.N.Y. Mar. 5, 2021) (citing Walker v. Schult, 717 F.3d 119, 122 n.1 (2d Cir. 2013)).

## I.    ADA Claims

The Court lacks subject matter jurisdiction to adjudicate plaintiffs' claims for employment discrimination and retaliation under the ADA because they are barred by state sovereign immunity under the Eleventh Amendment. Boiled down to its most basic understanding, the doctrine of state sovereign immunity means that federal "courts may not ordinarily hear a suit brought by any person against a nonconsenting State." Torres v. Texas Dep't of Pub. Safety, 142 S. Ct. 2455, 2461–62 (2022). This immunity was recognized by the Eleventh Amendment of the Constitution, which provides that "the Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI.

While the plain text of the Eleventh Amendment "applies only if the plaintiff is not a citizen of the defendant State," the Supreme Court "has long understood [the] Amendment to stand not so much for what it says as for the broader presupposition of our constitutional structure which it confirms." Allen v. Cooper, 140 S. Ct. 994, 1000 (2020) (internal quotation and citation omitted); Bd. of Trustees of Univ. of Alabama v. Garrett, 531 U.S. 356, 363 (2001) ("The ultimate guarantee of the Eleventh Amendment is that nonconsenting States may not be sued by private individuals in federal court."). "[T]he States, although a union, maintain certain attributes of sovereignty, including

sovereign immunity, and it is inherent in the nature of sovereignty not to be amenable to the suit of an individual without the sovereign's consent[.]" Woods v. Rondout Valley Cent. Sch. Dist. Bd of Educ., 466 F.3d 232, 236 (2d Cir. 2006) (internal quotations, citations, and alterations omitted). "[T]hat fundamental aspect of sovereignty constrains" the authority of federal courts, which cannot hear private suits against nonconsenting states. Allen, 140 S. Ct. at 1000.

"The preeminent purpose of state sovereign immunity is to accord States the dignity that is consistent with their status as sovereign entities." Fed. Mar. Comm'n v. S.C. State Ports Auth., 535 U.S. 743, 760 (2002) (citation omitted). Commensurate with this purpose, sovereign immunity "bars suits that seek either money damages or injunctive relief" from a state. McGinty v. New York, 251 F.3d 84, 91 (2d Cir. 2001) (internal citations omitted); see also Brokamp v. James, 573 F. Supp. 3d 696, 707 (N.D.N.Y. 2021) (dismissing claims against New York state agencies for declaratory and injunctive relief because "[r]egardless of the type of relief [plaintiff] seeks, the Eleventh Amendment bars this Court from assuming jurisdiction"); New York State Court Clerks Ass'n v. Unified Court Sys. of the State of New York, 25 F. Supp. 3d 459, 466 (S.D.N.Y. 2014) (holding that because UCS and the Office of Court Administration are immune from FLSA claims, they are also immune from suits seeking declaratory relief for FLSA violations); Harris v. New York State Educ. Dep't, 419 F. Supp. 2d 530, 533 (S.D.N.Y. 2006) (the Eleventh Amendment "bar to suit applies regardless of the relief sought"). In short, private citizens are generally barred by state sovereign immunity from bringing lawsuits in federal courts against states without their consent.

The scope of state sovereign immunity "extends beyond the states themselves to state agents and state instrumentalities that are, effectively, arms of a state." Gollomp v. Spitzer, 568 F.3d 355, 366 (2d Cir. 2009) (quoting Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ., 466 F.3d 232, 236 (2d Cir.2006)); T.W. v. New York State Bd. of L. Examiners, 996 F.3d 87, 92 (2d Cir. 2021). The party asserting immunity bears "the burden of demonstrating entitlement." T.W., 996 F.3d at 93 (quotation and citation omitted); Woods, 466 F.3d at 237 ("[T]he governmental entity invoking the

Eleventh Amendment bears the burden of demonstrating that it qualifies as an arm of the state entitled to share in its immunity.").

In this case, defendant is "unquestionably an 'arm of the state'" to which sovereign immunity extends. Gollomp, 568 F.3d at 368 (holding UCS is an "arm of the state"); Kelly v. New York State Unified Court Sys., No. 21-1633, 2022 WL 1210665, at *2 (2d Cir. Apr. 25, 2022) (summary order). Plaintiffs argue that they are "seeking injunctive relief which is not barred by sovereign immunity." No. 21-CV-6914, ECF No. 37 at 12; No. 21-CV-6915, ECF No. 38 at 12. However, the Supreme Court has "made it clear that the relief sought by a plaintiff suing a State is irrelevant to the question [of] whether the suit is barred by the Eleventh Amendment." Fed. Mar. Comm'n, 535 U.S. at 765-66 (quoting Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 59 (1996)); Harris, 419 F. Supp. 2d at 534.[8] Defendant is therefore immune from plaintiffs' ADA claims regardless of the relief plaintiffs seek.[9]

While state sovereign immunity is expansive, it is not absolute. Beaulieu v. Vermont, 807 F.3d 478, 483 (2d Cir. 2016). "[A] State may be subject to suit only in limited circumstances," PennEast Pipeline Co., LLC v. New Jersey, 141 S. Ct. 2244, 2258 (2021), two of which are relevant here. First, a state may waive sovereign immunity; second, Congress may enact legislation validly abrogating state sovereign immunity. Id. Plaintiffs invoke both exceptions here, arguing that defendant waived its immunity by entering a general appearance in this matter and that Congress abrogated state sovereign immunity by enacting the ADA or, alternatively, through the Americans with Disabilities Act

---

[8] Plaintiffs' argument may be a reference to the Ex parte Young doctrine, which provides that sovereign immunity does not bar an individual plaintiff from bringing suit "against individual state officers, as opposed to the state, in their official capacities, provided that [the] complaint (a) alleges an ongoing violation of federal law and (b) seeks relief properly characterized as prospective." In re Deposit Ins. Agency, 482 F.3d 612, 618 (2d Cir. 2007) (quotation and citation omitted). But plaintiffs did not sue individual state officers, and therefore the Ex parte Young exception is not applicable. Kelly, 2022 WL 1210665, at *2 (holding that "Ex parte Young's exception to the sovereign immunity bar . . . does not apply" to suit against UCS that did not name any individual defendants).

[9] In opposition, plaintiffs characterize their complaints as "not a suit for money damages." No. 21-CV-6914, ECF No. 37 at 6; No. 21-CV-6915, ECF No. 38 at 6. However, the Amended Complaints seek actual, compensatory, and punitive damages. No. 21-CV-6914, Am. Compl. ¶ 77; No. 21-CV-6915, Am. Compl. ¶ 77.

Amendment Act of 2008 (ADAAA). No. 21-CV-6914, ECF No. 37 at 5-6; No. 21-CV-6915, ECF No. 38 at 5-6. Plaintiffs' arguments do not overcome defendant's sovereign immunity.

A. Waiver

"A State remains free to waive its Eleventh Amendment immunity from suit in a federal court." Lapides v. Bd. of Regents of Univ. Sys. of Georgia, 535 U.S. 613, 618 (2002). A state waives immunity if it either "voluntarily invokes" federal court jurisdiction "or else if the State makes a clear declaration that it intends to submit itself" to federal court jurisdiction.[10] Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd., 527 U.S. 666, 675–76 (1999) (internal quotations and citations omitted). A state may waive sovereign immunity through its conduct litigating a suit in federal court. Lapides, 535 U.S. at 624; In re Charter Oak Assocs., 361 F.3d 760, 767 (2d Cir. 2004) (discussing Lapides and the "waiver-by-litigation" doctrine). Plaintiffs argue that is exactly what occurred in this case when defendant entered a "general appearance in this proceeding." No. 21-CV-6914, ECF No. 37 at 6; No. 21-CV-6915, ECF No. 38 at 6. Plaintiffs are incorrect.

The Supreme Court "has made clear in general that where a State *voluntarily* becomes a party to a cause and submits its rights for judicial determination, it will be bound thereby and cannot escape the result of its own voluntary act by invoking the prohibitions of the Eleventh Amendment." Lapides, 535 U.S. at 619 (emphasis in original) (quotation and citation omitted). Applying this principle, the Supreme Court held in Lapides that a State's "act of removing a lawsuit from state court to federal court waives" Eleventh Amendment immunity, at least if the State has waived immunity to suit in state court as well. Id. at 616; Beaulieu, 807 F.3d at 490-91. Removing a case from state court to federal court under those circumstances is a choice by the state to submit to federal court jurisdiction, and it would "seem anomalous or inconsistent" to allow a state to at once remove a case to federal court and then seek a declaration that the suit is outside federal court jurisdiction. Lapides, at 619-21. By contrast,

---

[10] "[T]he New York Legislature has never waived [New York's] sovereign immunity from liability under Titles I and V of the ADA." Quadir v. New York State Dep't of Lab., 39 F. Supp. 3d 528, 537 (S.D.N.Y. 2014).

defendant is here because plaintiffs named the Unified Court System as a defendant in these lawsuits, not because of any voluntary act by defendant. Defendant did not remove this case from state court to federal court like in Lapides. Defendant has not waived Eleventh Amendment immunity to plaintiffs' ADA claims by appearing in these lawsuits or by "filing motions to dismiss." Kozaczek v. New York Higher Educ. Servs. Corp., 503 F. App'x 60, 62 (2d Cir. 2012) (summary order); Guzzo v. Connecticut State Colls. & Univs., No. 21-CV-254, 2022 WL 903297, at *6 (D. Conn. Mar. 28, 2022) (noting that "[m]ere presence as a defendant in federal court does not suffice" to waive sovereign immunity) (citing Lapides, 535 U.S. at 613).

B.  Abrogation

Plaintiffs also argue that Congress validly abrogated state sovereign immunity for their claims under the ADA. No. 21-CV-6914, ECF No. 37 at 8; No. 21-CV-6915, ECF No. 38 at 8. This is not correct. "In 1990, Congress enacted the ADA 'to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities' and 'to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities.'" Hamilton v. Westchester Cnty., 3 F.4th 86, 92 (2d Cir. 2021) (quoting 42 U.S.C. § 12101(b)(1)-(2)). "The Act's first three titles prohibit discrimination against individuals with disabilities in three major areas of public life: employment and hiring (Title I); public services, programs, and activities (Title II); and public accommodations (Title III)." Id. (quotation and citation omitted). Title V of the ADA "prohibits retaliatory discrimination against an individual who has opposed any act or practice which the ADA makes unlawful," Volpe v. New York City Dep't of Educ., 195 F. Supp. 3d 582, 592 (S.D.N.Y. 2016) and any individual who has "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a).

However, the Supreme Court held in Garrett that Congress did not validly abrogate states' sovereign immunity for claims under Title I of the ADA. Garrett, 531 U.S. at 374. Contrary to plaintiffs' assertion, the ADA Amendments Act of 2008 ("ADAAA") did not overrule this holding.

Rather, the "principal purpose" of the ADAAA was to reject the Supreme Court's narrow reading of the ADA's definition of disability "and to make clear that the substantial-limitation requirement in the definition of 'disability' is not an exacting one." Hamilton, 3 F.4th at 92 (quotation and citation omitted). The statutory provision plaintiffs cite for their contention Congress abrogated sovereign immunity through the ADAAA, 42 U.S.C. § 12202, is the exact provision the Supreme Court held unconstitutional in Garrett and was not altered by the ADAAA.[11] Garrett, 531 U.S. at 364. Long after the ADAAA took effect, courts continue to find that states are immune to suit under the ADA. See e.g. Dimps v. Taconic Corr. Facility, 802 F. App'x 601, 603 (2d Cir. 2020) ("The ADA … [does] not abrogate states' sovereign immunity, which New York has not waived . . . .") (summary order). "And district courts within this Circuit have consistently extended Garrett's holding to ADA Title V retaliation claims—at least to the extent that those claims are predicated on ADA Title I discrimination claims." Quadir, 39 F. Supp. 3d at 536 (collecting cases)[12]; Dollinger v. New York State Ins. Fund, No. 14-CV-908, 2015 WL 8491013, at *3 (N.D.N.Y. Dec. 10, 2015), aff'd, 726 F. App'x 828 (2d Cir. 2018) (summary order) (dismissing hostile working environment and retaliation claims brought under the ADA against an arm of New York State as barred by sovereign immunity). Plaintiffs' ADA claims are therefore barred by state sovereign immunity and defendant's motions to dismiss should be granted.

## II.    Rehabilitation Act

Liberally construed, plaintiffs' Amended Complaints raise claims for disparate treatment and retaliation under Section 504 of the Rehabilitation Act of 1973.[13] Theoretically, these claims can avoid

---

[11] There is no question that § 12202 evinces a clear attempt by Congress to abrogate state sovereign immunity. Garrett, 531 U.S. at 363-64. But to *validly* abrogate sovereign immunity, clear intent is not sufficient. Congress must act "pursuant to a valid grant of constitutional authority," which it did not when enacting § 12202 (at least as applied to claims under Title I). Id. at 364; see also Allen, 140 S. Ct. at 1001 ("Not even the most crystalline abrogation can take effect unless it is a valid exercise of constitutional authority.") (quotation and citation omitted).

[12] Plaintiffs argue Quadir is not relevant because the facts are different. No. 21-CV-6914, ECF No. 37 at 16; No. 21-CV-6915, ECF No. 38 at 16. But none of the alleged differences impact the Court's central holding that Congress did not validly abrogate states' sovereign immunity for claims under Title I and Title V of the ADA.

[13] Defendant asks the Court to "disregard" plaintiffs' Rehabilitation Act claims because they were asserted "for the first time" in plaintiffs' opposition papers. No. 21-CV-6914, ECF No. 38 at 3; No. 21-CV-6915, ECF No. 39 at 3. But the Court

Eleventh Amendment immunity. The Rehabilitation Act provides, in pertinent part, that "[n]o otherwise qualified individual with a disability in the United States . . .  shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794(a). In enacting the Rehabilitation Act, Congress exercised its authority to condition receipt of federal funds (as defined by the Act) on a waiver of sovereign immunity. T.W., 996 F.3d at 92 (citing Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn, 280 F.3d 98, 113 (2d Cir. 2001) and 42 U.S.C. § 2000d-7 ("A state shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal Court for a violation of section 504 of the Rehabilitation Act of 1973[.]")). Assuming defendant has accepted federal funds and waived sovereign immunity to a claim under the Rehabilitation Act,[14] plaintiffs' Amended Complaints fail to state a claim for discrimination or retaliation and defendant's motions to dismiss should be granted.

---

must liberally construe a *pro se* plaintiff's pleadings. Here, plaintiffs' factual allegations raise a Section 504 claim and, indeed, plaintiffs reference Section 504 in their Amended Complaints. No. 21-CV-6914, Am. Compl. at 2; No. 21-CV-6915, Am. Compl. at 2. Quadir, 39 F. Supp. 3d at 537 (dismissing *pro se* plaintiff's Titles I and V claims under the ADA as barred by sovereign immunity before analyzing the factual allegations under the Rehabilitation Act because "special solicitude" required the Court to construe the pleadings "to raise the strongest possible legal arguments on the facts as alleged"). As plaintiffs are *pro se*, the Court should consider the factual allegations raised in plaintiffs' opposition to the motion to dismiss to the extent they develop claims raised by the initial complaint. Antrobus, 2021 WL 848786, at *3.

[14] In their opposition to defendant's motions, plaintiffs allege that defendant has received "assorted federal funds … for decades" including billions in pandemic aid. No. 21-CV-6914, ECF No. 37 at 18; No. 21-CV-6915, ECF No. 38 at 18. In reply, defendant argues that plaintiffs failed to "specify … which federally funded programs or special services" they were "excluded from participating in because of" their "purported disability." No. 21-CV-6914, ECF No. 38 at 9; No. 21-CV-6915, ECF No. 39 at 9. Defendant does not, however, dispute that it has received federal funds. See Cohn v. KeySpan Corp., 713 F. Supp. 2d 143, 159 (E.D.N.Y. 2010) (holding that plaintiff's allegation that defendants were recipients of federal funding upon information and belief "does not justify dismissal of plaintiff's Rehabilitation Act claim for failure to state a claim for relief").

Notably, however, the parties do not discuss T.W. v. New York State Board of Law Examiners, 996 F.3d 87 (2d Cir. 2021). In that case, the Second Circuit examined whether the Board of Law Examiners, which falls under the umbrella of UCS, was subject to suit under the Rehabilitation Act. The central question was whether the Board was "part of" a "department, agency . . . or other instrumentality" which had received federal funds for the purposes of the Rehabilitation Act. Id. at 94-95. The Second Circuit acknowledged that UCS, through its Chief Administrator, accepted federal funds but held that this acceptance did not constitute a waiver of Eleventh Amendment immunity on behalf of New York's entire judicial branch because UCS was not the "recipient" of federal funds as defined by the Rehabilitation Act. Id. at 96-97. Rather, only certain specialty courts falling within the Courts of Original Jurisdiction (the name for the trial courts of New York's court system) received federal funds within the meaning of the Rehabilitation Act during the time period at issue. Id.

T.W. suggests that, in deciding whether or not defendant has received federal funds under the Rehabilitation Act, asking whether UCS as a whole has received federal dollars is the wrong question. Rather, the "scope of waiver under § 504" analysis must begin by identifying which entities *within* UCS accepted federal funds. Id. at 95. While in T.W. the Second Circuit determined that only the Courts of Original Jurisdiction accepted federal funds, that analysis was limited to the period between 2013 and 2015. Id. Given that the parties here have not addressed T.W., the Court assumes, without deciding, that

A.  Discrimination Claim

"[T]he Rehabilitation Act imports the discrimination standards of Title I of the ADA and the retaliation standards of Title V." Quadir, 39 F. Supp. 3d at 537 (citing 29 U.S.C. § 794(d)); Natofsky v. City of New York, 921 F.3d 337, 345 (2d Cir. 2019) (holding that claims for employment discrimination under the Rehabilitation Act are governed by the same causation standard as claims under Title I of the ADA). "In order to establish a *prima facie* case of employment discrimination under the ADA or the Rehabilitation Act, a plaintiff must adequately plead that he was terminated because of a qualifying disability." Smith v. Hogan, 794 F.3d 249, 253 (2d Cir. 2015). A plaintiff must allege that: "(1) plaintiff's employer is subject to the Rehabilitation Act; (2) plaintiff was disabled within the meaning of the Rehabilitation Act; (3) plaintiff was otherwise qualified to perform the essential functions of her job, with or without reasonable accommodation; and (4) plaintiff suffered an adverse employment action because of her disability." Quadir, 39 F. Supp. 3d at 540 (quoting Jacques v. DiMarzio, Inc., 386 F.3d 192, 198 (2d Cir. 2004)) (alterations omitted).

To satisfy the causation prong, "a plaintiff alleging an employment discrimination claim under Section 504 of the Rehabilitation Act must show that the plaintiff's disability was a but-for cause of the employer's action, not the sole cause." Natofsky, 921 F.3d at 341. "'[A] plaintiff need only give plausible support to a minimal inference of discriminatory motivation' at the pleading stage." Dooley v. JetBlue Airways Corp., 636 F. App'x 16, 21 (2d Cir. 2015) (quoting Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 84 (2d Cir. 2015)) (summary order). "[T]he reduced burden of plausibly alleging facts tending to show a 'minimal inference' of discrimination does not obviate the requirement that Plaintiff plausibly allege that he is disabled within the meaning of the ADA." Everitt v. Jarvis

---

defendant was a recipient of federal funds and therefore plaintiffs' Amended Complaints, liberally construed as pleading Rehabilitation Act claims, should not be dismissed on this basis.

Airfoil, Inc., No. 19-CV-1853, 2020 WL 7230858, at *3 (D. Conn. Dec. 8, 2020) (citing Littlejohn v. City of New York, 795 F.3d 297, 311 (2d Cir. 2015)).

Here, plaintiffs' employment discrimination claims fail because plaintiffs have not plausibly alleged that they are disabled within the meaning of the Rehabilitation Act or the ADA. "The Rehabilitation Act defines the term 'individual with a disability' by cross reference to the Americans with Disabilities Act." Larnard v. McDonough, 578 F. Supp. 3d 371, 383 (W.D.N.Y. 2022) (citation omitted). "A person has a 'disability' under the ADA (or Rehabilitation Act) if he has: (a) 'a physical or mental impairment that *substantially limits* one or more [of his] major life activities,' (b) 'a record of such an impairment,' or (c) is 'regarded as having such an impairment.'" Veldran v. Dejoy, 839 F. App'x 577, 579 (2d Cir. 2020) (quoting 42 U.S.C. § 12102(1); 29 U.S.C. § 705(9)(B)) (emphasis in original) (summary order). Plaintiffs allege they are disabled because defendant regarded them as disabled and because defendant has a "record of" them as disabled.

      i.     Regarded As Disabled

Under the ADA, an individual is "regarded as" having a disability "if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment[,]" provided, however, that the impairment is not transitory and minor (that is, the impairment is not one with an "actual or expected duration of 6 months or less").[15] 42 U.S.C. § 12102(3)(A)-(B); see Hamilton, 3 F.4th at 94 ("[E]ven after the ADAAA's enactment, '[a]n individual is not *regarded* as having a disability if the public entity demonstrates that the impairment is, objectively, both transitory and minor,' with 'transitory' statutorily defined as 'lasting or expected to last six months or less.'") (quoting 28 C.F.R. § 35.108(f)(2) (alterations

---

[15] The ADA implementing regulations issued by the U.S. Equal Employment Opportunity Commission ("EEOC") define physical or mental impairment as: "(1) Any physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more body systems, such as neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genitourinary, immune, circulatory, hemic, lymphatic, skin, and endocrine; or (2) Any mental or psychological disorder, such as an intellectual disability (formerly termed 'mental retardation'), organic brain syndrome, emotional or mental illness, and specific learning disabilities." 29 C.F.R. § 1630.2(h); see also 45 C.F.R. § 84.3(j)(2)(i) (analogous regulation in Rehabilitation Act context).

omitted). "[T]he decisive issue is the employer's *perception* of his or her employee's alleged impairment." Giordano v. City of New York, 274 F.3d 740, 748 (2d Cir. 2001) (citation omitted) (emphasis in original).

Plaintiffs assert that, starting on September 1, 2021, when defendant issued the testing policy memorandum, defendant "began regarding" plaintiffs "as having the disability of a contagious disease and made a record of such disability by mis-classifying plaintiff as being substantially limited with an impaired immune system and an impaired respiratory system[.]" No. 21-CV-6914, Am. Compl. ¶ 53; No. 21-CV-6915, Am. Compl. ¶ 53. The only support plaintiffs offer for the contention defendant regarded them as having a disability is the fact they were subject to defendant's COVID-19 policies requiring employee testing and, subsequently, vaccination. But defendant's policies applied to *all* employees, not only those who had a contagious disease or an impaired respiratory or immune system. As defendant's September 10, 2021 memorandum states, defendant "will require all judges and non-judicial personnel to be vaccinated by September 27, 2021, unless otherwise approved for an exemption due to medical reasons or sincerely held religious beliefs." No. 21-CV-6914, Am. Compl. at 36; No. 21-CV-6915, Am. Compl. at 36 (emphasis added). That plaintiffs were subject to the challenged policies therefore says little about how defendant regarded them, except that defendant regarded them as employees, and that once they failed to get vaccinated or seek an exemption, they were regarded as noncompliant.[16]

That an employer requires an employee to follow generally applicable COVID-19 safety rules and enforces those policies when an employee fails to comply does not, without more, support the inference that the employer regards the employee as disabled. Courts across the country confronted

---

[16] Plaintiffs repeatedly assert that defendant's COVID-19 policies are not rational, claiming that there is no "verifiable" pandemic. No. 21-CV-6914, Am. Compl. ¶ 71; No. 21-CV-6915, Am. Compl. ¶ 71. While this Court need not pass judgment on the wisdom of defendant's policies, a sister court in this Circuit denied a request for a preliminary injunction against defendant's vaccine mandate because "[p]reventing the spread of COVID-19 within the state court system, both to protect health and promote efficient access to justice, is a legitimate state goal and requiring employees to become vaccinated is rationally related to achieving that goal." Ferrelli v. Unified Ct. Sys., No. 22-CV-68, 2022 WL 673863, at *6 (N.D.N.Y. Mar. 7, 2022).

with substantively identical challenges to employer vaccine mandates under the ADA have reached the same conclusion. See Speaks v. Health Sys. Mgmt., Inc., No. 22-CV-77, 2022 WL 3448649, at *5 (W.D.N.C. Aug. 17, 2022) ("Refusing to get a vaccine required by an employer is not itself an 'impairment' of any sort. Rather, it reflects a personal *choice* by [plaintiff] that, while [plaintiff's] to make in this context, cannot be considered an impairment under the ADA.") (emphasis in original); Shklyar v. Carboline Co., 2022 WL 2867073, at *5 (E.D. Mo. July 21, 2022), *aff'd*, 2023 WL 1487782 (8th Cir. Feb. 3, 2023) (holding plaintiff failed to plausibly allege defendant regarded her as disabled when it implemented COVID-19 policies because to find otherwise "would require inferring that [defendant] regarded all of its . . . employees as having a disability").

Plaintiffs concede the challenged policies applied to all employees but argue that this fact cuts in their favor because "[t]here is no rational basis to act as if every single member of a community (e.g. all employees of the defendant) suddenly have the same exact illness." No. 22-CV-6914, ECF No. 37 at 7; No. 22-CV-6915, ECF No. 38 at 7. Yet this result is exactly why plaintiffs' claims are not plausible. While the Court empathizes with plaintiffs, who were terminated after many years of dedicated service to the UCS, plaintiffs are simply "mistaken" in their "belief that COVID precautions instituted to protect public health translate into a belief or perception that all people are disabled." Linne v. Alameda Health Sys., No. 22-CV-4981, 2023 WL 375687, at *2 n.2 (N.D. Cal. Jan. 24, 2023). Plaintiffs therefore fail to plausibly allege that defendant regarded them as disabled.[17]

      ii.     Record of Disability

Plaintiffs also fail to allege they are disabled within the meaning of a "record of" impairment. "To show a record of impairment, a plaintiff must establish that she 'has a history of an impairment

---

[17] Additionally, several courts have observed that the "actual or expected" duration of a COVID-19 infection is less than six months, meaning the illness does not generally fall within the "regarded as" category of disability. Lundstrom v. Contra Costa Health Servs., No. 22-CV-6227, 2022 WL 17330842, at *5 (N.D. Cal. Nov. 29, 2022) ("Federal courts generally agree that a COVID-19 infection is not a disability") (collecting cases).

that substantially limited one or more major life activities when compared to most people in the general population, or was misclassified as having had such an impairment.'" Kelly v. New York State Off. of Mental Health, 200 F. Supp. 3d 378, 394 (E.D.N.Y. 2016) (quoting 29 C.F.R. § 1630.2(k)(2)); Garafola v. Dejoy, No. 17-CV-1827, 2022 WL 4642091, at *7 (E.D.N.Y. Sept. 30, 2022). This requirement is not satisfied by a bare recitation of the ADA definition of disability—rather, the plaintiff "must allege further facts as to how [their] disability 'substantially limits' [their] 'major life activities' to plausibly state a claim." Morey v. Windsong Radiology Grp., P.C., 794 F. App'x 30, 33 (2d Cir. 2019) (summary order) (citing Iqbal, 556 U.S. at 678); Gaube v. Day Kimball Hosp., No. 13-CV-01845, 2015 WL 1347000, at *7 (D. Conn. Mar. 24, 2015) ("[S]ince the enactment of the ADAAA, courts have dismissed ADA claims at the pleading stage for failure to adequately allege substantial limitation of a major life activity.").

Here, plaintiffs argue they are disabled under the "record of" impairment category because defendant "mis-classify[ed them] as having an impairment that substantially limited [their] ability to engage in one or more major life activities such as working, breathing, thinking, etc., the cure for which the defendant asserted was [defendant's] 'Covid policy.'" No. 22-CV-6914, ECF No. 37, at 7; No. 22-CV-6915, ECF No. 38 at 7. Plaintiffs assert defendant classified them as "unvaccinated[,]" which they characterize as "[d]iscrimination based upon physical condition." No. 22-CV-6914, Am. Compl. ¶ 65 n.7; No. 22-CV-6915, Am. Compl. ¶ 65 n.7. But as noted above, defendant's COVID-19 policies applied to all employees. Defendant may have recorded plaintiffs as noncompliant or even unvaccinated, but that alone is insufficient to demonstrate defendant misclassified plaintiffs as having an impairment of any sort, let alone a disability as defined by the ADA. See Shklyar, 2022 WL 2867073, at *4 (allegation defendant misclassified plaintiff by subjecting her to COVID-19 policy is "implausible" because the policies were generally applicable to all of defendant's employees).

Plaintiffs further fail to allege "any details supporting how" the alleged impairments "substantially limit[ed] any major life activities," which they identify in their opposition as working,

breathing, and thinking. Kane v. City of New York, No. 22-CV-1339, 2022 WL 17553307, at *4 (E.D.N.Y. Dec. 9, 2022) (emphasis added) (citation omitted); Kelly, 200 F. Supp. 3d at 394 (finding that plaintiff failed to plead a record of impairment for the same reason they failed to plausibly allege a substantial limitation to a major life activity regarding their alleged disability); see also Earl v. Good Samaritan Hosp. of Suffern NY, No. 20-CV-3119, 2022 WL 4087597, at *10 (S.D.N.Y. Sept. 6, 2022) (dismissing ADA claim where plaintiff failed to plausibly allege how his COVID-19 infection substantially limited his major life activities, including eating and sleeping). Plaintiffs' "allegations merely track the language of the statute" and therefore fail to state a claim. Cain v. Mandl Coll. of Allied Health, No. 14-CV-1729, 2017 WL 2709743, at *4 (S.D.N.Y. June 22, 2017) ("Vague, conclusory assertions without details on how [plaintiff's] condition actually affects a major life activity are insufficient.") (citation omitted).

Plaintiffs clearly disagree with defendant's COVID-19 policies, but that disagreement does not constitute a disability under the ADA or Rehabilitation Act. Despite plaintiffs' assertions to the contrary, an employee is not disabled under the ADA simply because the employee tells the employer, repeatedly and insistently, that the employee believes that they are being treated as disabled and they are being discriminated against.[18] No. 21-CV-6914, Am. Compl. at 2; No. 21-CV-6915, Am. Compl. at 2 ("It does not matter whether or not the defendant regarded the plaintiff as having a disability. The plaintiff gave adequate notice that she was a qualified individual with a disability. . . .").

Defendant's motions to dismiss plaintiffs' claims under the Rehabilitation Act should be granted.

---

[18] Plaintiffs also allege that defendant fired them without an individualized determination that they constituted a "direct threat." No. 21-CV-6914, Am. Compl. at 2; No. 21-CV-6915, Am. Compl. at 2. But this argument puts the cart before the horse. An employer may defend against a claim of disability discrimination by asserting a plaintiff who is otherwise covered by the ADA is a "direct threat," a term defined by the Act as someone who poses "a significant risk to the health or safety of others that cannot be eliminated by reasonable accommodation." 42 U.S.C. § 12111(3). See Hart v. City of Johnstown, 16-CV-619, 2019 WL 1385612, at *10 (N.D.N.Y. Mar. 27, 2017) (noting the "direct threat" defense is interrelated with the issue of whether the plaintiff is qualified to perform his or her job). However, as plaintiffs have failed to plausibly allege that they are disabled within the meaning of the Acts, there is no reason for the Court to consider the "direct threat" defense.

B. Retaliation

"[T]he Rehabilitation Act also prohibits retaliation against a person for opposing any practice made unlawful by the Act." Dodd v. City Univ. of New York, 489 F. Supp. 3d 219, 245 (S.D.N.Y. 2020) (citing 29 U.S.C. § 794(d); 29 C.F.R. § 1614.01(b)). "To state a claim for retaliation under the ADA and Section 504 of the Rehabilitation Act, a plaintiff must plausibly allege that (1) the employee was engaged in an activity protected by the ADA or Rehabilitation Act, (2) the employer was aware of that activity, (3) an employment action adverse to the plaintiff occurred, and (4) there existed a causal connection between the protected activity and the adverse employment action." Conway v. Healthfirst Inc., No. 21-CV-6512, 2022 WL 4813498, at *3 (S.D.N.Y. Sept. 30, 2022) (quotation, citation and alterations omitted); Caskey v. Cnty. of Ontario, 560 F. App'x 57, 58 (2d Cir. 2014) (summary order); Laface v. E. Suffolk Boces, 349 F. Supp. 3d 126, 149 (E.D.N.Y. 2018) (quoting Vega, 801 F.3d at 90). "To survive a motion to dismiss, an employee need not specifically plead every element; she must allege just enough factual matter to render the retaliation claims plausible." Pediford-Aziz v. City of New York, 170 F. Supp. 3d 480, 485 (E.D.N.Y. 2016) (internal quotation, citation, and alteration omitted). A "[p]laintiff need not allege a disability to sustain a retaliation claim." Schimkewitsch v. New York Inst. of Tech., No. 19-CV-5199, 2020 WL 3000483, at *5 (E.D.N.Y. June 4, 2020) (citing Kelly, 200 F. Supp. 3d at 403).

For the purposes of this Report, even assuming plaintiffs established that they engaged in protected activity and were terminated, they fail to demonstrate that their firing was retaliatory. To plausibly allege a causal connection between protected activity and an adverse employment action, "the plaintiff must allege that the retaliation was the 'but-for' cause of the employer's adverse action, i.e., that 'the adverse action would not have occurred in the absence of the retaliatory motive.'" Conway, 2022 WL 4813498, at *3 (quoting Riddle v. Citigroup, 640 F. App'x 77, 79 (2d Cir. 2016) (summary order)); see also D'Alessio v. Charter Commc'ns, LLC, No. 18-CV-2738, 2020 WL

5638721, at *6 (E.D.N.Y. Sept. 21, 2020) ("ADA retaliation claims require a but-for causal showing between the adverse action and the protected activity.") [19] "At the *prima facie* stage, causation may be established: '(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant.'" Conway, 2022 WL 4813498, at *3 (quoting Gordon v. N.Y.C. Bd. of Educ., 232 F.3d 111, 117 (2d Cir. 2000)).

In this case, plaintiffs identify no facts directly demonstrating retaliatory animus, nor any evidence of disparate treatment. Plaintiffs' termination did, however, closely follow their allegedly protected activity. For example, plaintiffs' EEOC charges were filed on September 20, 2021 and plaintiffs were allegedly terminated on September 28, 2021 and October 19, 2021. No. 21-CV-6914, Am. Compl. ¶ 14; No. 21-CV-6915, Am. Compl. ¶ 14.

However, the inference of retaliation that often attaches when a defendant takes an adverse employment action against a plaintiff shortly after they engage in protected activity is belied here by the facts in plaintiffs' pleadings. See Pediford-Aziz, 170 F. Supp. 3d at 486–87 (holding plaintiff failed to state a claim for retaliatory discharge because "any link between the protected activities and Plaintiff's termination is belied by her own submissions, which bolster Defendants' legitimate reason for the termination").

A plaintiff who is "demonstrably at risk of being disciplined" for legitimate reasons prior to engaging in protected activity cannot "rely solely on temporal proximity" to establish retaliation. Catanzaro v. City of New York, No. 10-CV-1825, 2011 WL 335648, at *7 (S.D.N.Y. Jan. 25, 2011),

---

[19] The Second Circuit has not expressly decided whether ADA retaliation claims are governed by the same "but-for" causation standard that applies to Title VII retaliation claims. "But the reasoning of Univ. of Tex. Sw. Med. Ctr. v. Nassar, 570 U.S. 338, 133 S.Ct. 2517, 186 L.Ed.2d 503 (2013), and Natofsky v. City of New York, 921 F.3d 337 (2d Cir. 2019), holding that the but-for causation standard applies to Title VII retaliation and ADA discrimination claims, respectively, applies with equal force to the causation standard for ADA retaliation claims." Mehta v. City of New York, No. 19-CV-3857, 2022 WL 280460, at *7 (E.D.N.Y. Jan. 31, 2022).

*aff'd*, 486 F. App'x 899 (2d Cir. 2012) (internal quotation omitted); see also Slattery v. Swiss Reinsurance Am. Corp., 248 F.3d 87, 95 (2d Cir. 2001) (holding an "inference of retaliation does not arise" notwithstanding temporal proximity where "gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity"); Amaya v. Ballyshear LLC, 295 F. Supp. 3d 204, 222 (E.D.N.Y. 2018) (dismissing Title VII retaliation claim because plaintiff's "failure to provide any requested information to the Corporate Defendants regarding her ability to return to work constitutes a significant intervening event" which "forestalls the Plaintiff's ability to look to temporal proximity to establish causation"); Williams v. City University of New York, No. 10-CV-2127, 2011 WL 6934755, at *7 (E.D.N.Y. Dec. 30, 2011). Temporal proximity alone also fails to establish retaliation if a plaintiff's protected activity and the employer's adverse action *necessarily* occur close in time. See Lee v. Saul, No. 19-CV-6553, 2022 WL 873511, at *12 (S.D.N.Y. Mar. 23, 2022) (finding close temporal proximity could not support a Rehabilitation Act retaliation claim given that "there was rarely a time" that defendant "could have taken action against Plaintiff that would not have been recently preceded by some complaint that [plaintiff] believes is subject . . . to protection") (quotation and alteration omitted).

Plaintiffs' termination[20] does not give rise to an inference of retaliation, notwithstanding that it followed shortly after plaintiffs' allegedly protected activity. Plaintiffs' opposition to defendant's vaccine mandate as well as their September 20, 2021 EEOC charge occurred *after* defendant issued and distributed the vaccination policy memorandum on September 10, 2021. From the outset, before plaintiffs' opposition, defendant's vaccine mandate required all employees to comply by September 27, 2021 or face "disciplinary action, up to and including termination." No. 21-CV-6914, Am. Compl. at 38; No. 21-CV-6915, Am. Compl. at 37. There was, therefore, no moment when plaintiffs could oppose the vaccine mandate without that opposition coming close in time to the date the policy itself

---

[20] Plaintiffs do not and could not plausibly allege that the vaccination mandate was, itself, instituted as a form of retaliation for their complaints about the testing mandate.

set for compliance or discipline. Lee, 2022 WL 873511, at *12. Similarly, from the moment the vaccine mandate was announced, plaintiffs risked termination if they failed to comply. Plaintiffs' own pleadings make clear that that they were disciplined as a consequence of their failure to comply with the vaccine mandate, rather than as retaliation for their opposition to it.[21] Amaya, 295 F. Supp. 3d at 222; Catanzaro, 2011 WL 335648, at *7. Plaintiffs identify no "weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate, nonretaliatory reasons for its action[.]" Pediford-Aziz, 170 F. Supp. at 486 (quotation and citation omitted).

Under the facts alleged here, the close temporal proximity between plaintiffs' alleged protected activity and defendant's alleged discriminatory treatment cannot, alone, support an inference of retaliation. As plaintiffs offer no other facts to suggest their termination was retaliatory, defendant's motions to dismiss plaintiffs' claims under the Rehabilitation Act should be granted.

III.    Leave to Amend

"Ordinarily, *pro se* plaintiffs are granted opportunities to amend their complaints freely; however, courts need not afford plaintiffs an opportunity to amend where it is clear that any attempt to amend the complaint would be futile." Kimmel v. New York State Assembly, No. 20-CV-1074, 2020 WL 6273975, at *3 (E.D.N.Y. Oct. 26, 2020) (citing Cruz v. Gomez, 202 F.3d 593, 597–98 (2d Cir. 2000)). Here, plaintiffs were afforded the opportunity to amend their original complaints after defendant identified the grounds upon which it would move to dismiss. See No. 21-CV-6914, ECF Nos. 17, 20; No. 21-CV-6915, ECF Nos. 17, 20. Leave to amend should not be granted again as the Court lacks jurisdiction over plaintiffs' ADA claims. Even when liberally construed under the Rehabilitation Act, plaintiffs' Amended Complaints fail to state a claim upon which relief can be granted and leave to amend should not be granted.

---

[21] As explained in footnote three, *supra*, plaintiffs were barred from work on different dates due to the suspension of defendant's vaccine mandate by the temporary injunction and Colleen's quarantine following her COVID-19 exposure.

**CONCLUSION**

Accordingly, it is respectfully recommended that the Court should grant defendant's motions to dismiss plaintiffs' Amended Complaints.

**FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION**

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections (and any responses to objections) shall be filed with the Clerk of the Court. Any request for an extension of time to file objections must be made within the fourteen-day period. Failure to file a timely objection to this Report generally waives any further judicial review. Marcella v. Capital Dist. Physicians' Health Plan, Inc., 293 F.3d 42, 46 (2d Cir. 2002); Small v. Sec'y of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989); see Thomas v. Arn, 474 U.S. 140 (1985). SO ORDERED.

_____/S/_____
LOIS BLOOM
United States Magistrate Judge

Dated:  March 22, 2023
         Brooklyn, New York